# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TISSUE TECHNOLOGY LLC., et al.,

        Plaintiffs,

v.                                                                Case No. 14-C-1203

TAK INVESTMENTS, LLC,

        Defendant.

## DECISION AND ORDER

Plaintiffs brought the diversity action for breach of contract against Defendant seeking specific performance in the form of an order conveying a 27% interest in Defendant to Plaintiff. The case is before court on cross motions for summary judgment. For the reasons that follow, Plaintiffs' motion will be denied, and Defendant's motion will be granted but only in part.

## BACKGROUND

This case is the second iteration of a dispute between the Plaintiffs, a group of entities controlled by Ronald Van den Heuvel, and Tak Investments, LLC, a Delaware company. The dispute arises out of Tak's purchase of an Oconto Falls, Wisconsin, paper mill from the Plaintiffs. In a previous action, Case No. 12-C-1305, the Plaintiffs (also known as the OFTI Group) sought to enforce a provision in the parties' agreement that would require the Defendant to turn over "an undiluted 27% ownership interest of the highest class in [Tak] Investments" because the Plaintiffs had deemed four promissory notes cancelled. Upon motions for summary judgment, this court

found for the Defendant on the ground that one of the four notes had been assigned to another party, thus precluding the ability of the Plaintiffs to deem all four notes cancelled. As such, the Plaintiffs had not fulfilled a condition precedent to enforcing the provision of the contract upon which they relied. However, the court noted that because the assignee "could reassign the fourth note back to OFTI [i.e., the Plaintiffs] there is nothing in the record to suggest that OFTI is permanently foreclosed from cancelling all four notes and thereby fulfilling the condition precedent." (No. 12-C-1305, ECF No. 42 at 5.)

This is exactly what has now happened. The Plaintiffs, having received an assignment of the fourth note, are now payees of all four notes and thus have the ability they lacked in the previous action, which is to "deem" (as the contract puts it) the notes to be cancelled. Accordingly, they believe they are entitled to the remedy of specific performance, that is, an order requiring Defendant Tak Investments, LLC to transfer a 27% interest in itself over to the Plaintiffs. Both sides have moved for summary judgment.

The operative language is contained within an agreement called "Final Business Terms Agreement," dated April 16, 2007. It provides as follows:

> Through the third anniversary of the date of each Investment Note, the OFTI Group agrees to pay any payments due for interest or principal required per the terms of the Investment Notes. . . If such Investment Notes are deemed cancelled by the OFTI Group after the third anniversary of the date of the Investment Notes, the OFTI Group shall receive an undiluted 27% ownership interest of the highest class in [Tak] Investments . . .

(ECF No. 25-3 at ¶ 2.G.)

# ANALYSIS

**1. The LLC Does Not Own Itself.**

The Defendant's first argument is very simple: it argues that it does not have the ability to convey any interest in itself to the Plaintiffs, or anyone else for that matter. Only owners can convey interests, and Tak Investments, LLC — the only defendant in this action — does not own itself. Instead, the LLC is owned by Sharad Tak and his wife, and / or Tak Investments, Inc., none of whom are party to this action.

The Plaintiffs protest that LLCs have, under state law, all kinds of rights to convey interests and dispose of property. That, of course, is true. But none of the statutory provisions Plaintiffs cite stands for the principle that an LLC may convey something it does not possess, namely, an ownership interest in *itself*. For example, the Plaintiffs cite a Maryland statute that provides an LLC may purchase, sell, hold, and pledge "stock or other interests in and obligations of other corporations . . ." Maryland Code §4A-203. But the key word, of course, is "other." The Maryland code does not provide that an LLC may issue shares in *itself*, which is what the Plaintiffs want. (The Plaintiffs cited Maryland law because they had been unclear whether the LLC was a Delaware or Maryland LLC.) The Plaintiffs also argue that Delaware law allows for assignments of ownership interests as well. But the provision they cite, 6 Del. C. § 18-702, merely provides that LLC interests may be assigned, not that the LLC itself would do the assigning. In fact, the statute suggests that any assignment would be by the *member* (i.e., the owner), not the LLC itself.[1]

This is not merely an academic problem or an elevation of form over function; it is a

---

[1] Subsection (e) is the only relevant portion of the Delaware statute. Although that provision acknowledges that LLCs may acquire interests from LLC members, such interest is thereby deemed cancelled at that point.

3

recognition of the realities of ownership. When part of a company—or anything else, for that matter—transfers *to* someone, it is also necessarily transferred *from* someone. The percentage of ownership must always add up to 100%. And so if the company itself purported to transfer 27% of itself to the Plaintiffs, *from whom* would it be taking that share? And on whose authority? These questions demonstrate the essence of the problem, which may be summarized succinctly: "A corporation does not own itself." *Hanley v. Kusper,* 61 Ill. 2d 452, 462, 337 N.E.2d 1, 7 (Ill. 1975).

It is true enough that more traditional corporations have the ability to issue shares in themselves, for example, as part of employee stock incentive plans. It is also conceivable that an LLC in some circumstances could transfer part of its ownership. But those abilities would be products of specific contractual arrangements (for example, an ESOP, a convertible bond, or the LLC operating agreement) providing for the company to issue new shares, shares that would dilute the existing owners' interests. If the Plaintiffs here had expected the Defendant to issue *new* shares in itself, one would expect their agreement to say so. Instead, the contract simply provides, in a single sentence, that the Plaintiffs "shall receive an undiluted 27% ownership interest." (ECF No. 25-3 at ¶ 2.G.) Since LLCs normally do not have "shares" in the same way corporations do—they function more like partnerships—any agreement to issue new ownership interests would have been more specific than the vague "shall receive" language the parties used. This is confirmed by the fact that Sharad Tak, the LLC's owner, signed the agreement on his own behalf. A more reasonable reading of the agreement is that the parties intended that Sharad Tak would be obligated to convey any ownership interest, since he was the only owner of Tak Investments, LLC to sign that agreement. He was the only party with the ability to convey a 27% share of his company. Thus, even if an LLC had a theoretical ability to issue an ownership interest in itself, I do not construe the

4

parties' agreement as requiring the company to do that under these circumstances.[2]  For this reason, Plaintiffs' motion for summary judgment on its claim for specific performance will be denied.  But because Plaintiffs seek "such other relief as the court deems just and proper" (ECF No. 1 at ¶ 21), I will address Defendant's remaining argument as well.

**2. Conditions Precedent**

The Defendant also argues that the Plaintiffs were obligated to pay the principal and interest due under the notes.  At this point, some elaboration of the parties' arrangement is warranted.  Recall that the notes in question were four promissory notes, totaling $16.4 million, issued by Tak Investments, LLC on April 16, 2007.  The notes ranged in amounts ranging from $3 million to $5 million, all of them listing Plaintiff Tissue Products Technology Corporation as the payee.  (The parties do not explain why four notes were issued (rather than one) when the maker, the payee, and other terms were the same.)  Each note contained a payment schedule.  For example, the $4.4 million note required principal payments in the amount of $440,000 each on April 16, 2008 and April 16, 2009, with the remainder of $3.52 million due on April 16, 2010.  The other notes followed the same schedule.  (ECF No. 1-1 at 1-4.)

The notes themselves do not contain any unusual provisions.  However, the Final Business Terms Agreement, also dated April 16, 2007, contains a provision with a debatable meaning: "Through the third anniversary of the date of each Investment Note, the OFTI Group agrees to pay any amounts due for interest or principal required per the terms of the Investment Notes." (ECF No. 25-3 at ¶ 2.G.)  In the Defendant's view, this clause required the Plaintiffs (i.e., the OFTI Group)

---

[2] It is not clear why the Plaintiffs have not sued Sharad Tak personally.

5

Case 1:14-cv-01203-WCG   Filed 12/02/16   Page 5 of 8   Document 40

to pay the principal and interest due *to themselves* during the first three years of the note.[3]  Because they failed to do so, they cannot enforce the clause requiring transfer of 27% of Tak Investments, LLC.  In fact, under this reading of the clause, the Final Business Terms Agreement would require the Plaintiffs to have extinguished the *entirety* of the notes, because all of the principal was due within the first three years, and the OFTI Group had agreed to pay "through the third anniversary of the date of each Investment Note," or April 16, 2010.

The Plaintiffs believe this is an odd reading of the agreements; in fact, such an interpretation would actually read the notes out of existence because the payee of the notes would have to pay the entire amount of principal and interest.  In their view, the Plaintiffs were not agreeing to pay themselves the entirety of the notes, for the simple reason that it would have made no sense to do so.  Instead, they state that they were merely intending to pay any amounts owed in the event one or more of the notes were pledged or assigned to a third party.  In that event, the OFTI Group would ensure that demands of principal or interest were not made to Tak Investments, LLC.  This is backed up by language indicating that the OFTI Group agreed to indemnify Tak Investments resulting from any failure on OFTI Group's part to make such payments.  (*Id.*)  If it had merely been agreeing to pay *itself,* it would not have made sense to indemnify Tak Investments for any failure to do so, since Tak would presumably not suffer any harm from that failure.[4]

The only thing that's clear is that the clause is unusual and subject to competing

---

[3] The payee was Tissue Products Technology Corporation, one of the Plaintiffs, but as a member of the OFTI Group it would essentially be paying itself.

[4] This argument is also unclear.  If Tak Investments was to be the maker of the notes, presumably it would have remained the maker even if one of the notes was assigned to a third party.  The Plaintiffs do not explain why they would have assumed the role of maker simply by assigning a note to someone else.

6

interpretations. Presently before me, however, is the more limited argument made by Tak Investments, which is that OFTI Group's failure to make these principal and interest payments forecloses its ability to seek the 27% of Tak Investments. I conclude that, even if OFTI Group was obligated to pay itself the principal and interest due under the four notes, its failure to do so does not excuse Tak and / or Tak Investments, LLC from transferring 27% of the company. Most importantly, the provision in question was not related to the promise that the Plaintiffs would receive 27% of Tak Investments. Even assuming that OFTI Group was supposed to pay its own principal and interest, the Defendant has not explained why such an obligation would prevent the OFTI Group as payee from cancelling the notes or relieve Tak of the obligation that he transfer part of the company. Payment of principal and interest is therefore not properly considered as a "condition precedent" to any other part of the agreement.

## CONCLUSION

In sum, I conclude that Plaintiffs' motion for summary judgment on their claim for specific performance should be denied. This does not mean, however, that Plaintiffs are entitled to no relief at all. As noted above, the complaint also seeks "such other relief as the court deems just and proper." (ECF No. 1 at ¶ 21.) The Plaintiffs have sought, in the alternative, damages for nonpayment of the four notes, which in their calculation would amount to some $29 million. The Defendant believes such a claim would be barred by the statute of limitations, and in any event it was not pled in the complaint. It is conceivable, however, that such a claim would relate back to the filing of this action in 2014, *see* 56 Fed. R. Civ. P. 15(c), assuming it even needed to be pled as

7

a specific claim in the first place[5]—matters that have not been briefed. Even if collection on the notes is no longer available, some other legal or equitable remedy might be appropriate in light of the unusual facts of the case. Given these circumstances, and the underdeveloped record, I am unable to conclude that judgment should be entered in the Defendant's favor on the entire case at this time.

The Defendant's motion for summary judgment is therefore **GRANTED,** to the extent I conclude that specific performance is not a viable remedy against Tak Investments, LLC. The Plaintiff's motion is **DENIED** for the same reason. The clerk will set the matter on the calendar for a telephone status conference to discuss further proceedings.

**SO ORDERED** this 2nd day of December, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

---

[5] "A plaintiff is not required to set forth a legal theory to match the facts, so long as some legal theory can be sustained on the facts pleaded in the complaint." *O'Grady v. Vill. of Libertyville,* 304 F.3d 719, 723 (7th Cir. 2002).

8

Case 1:14-cv-01203-WCG   Filed 12/02/16   Page 8 of 8   Document 40