UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TISSUE TECHNOLOGY LLC, *et al.*,

    Plaintiffs,

v.                                                          Case No. 14-C-1203

TAK INVESTMENTS LLC, *et al.*,

    Defendants.

## DECISION AND ORDER OF DISMISSAL

Plaintiffs commenced this diversity action for breach of contract and for recovery on four promissory notes having a total face value of $16.4 million. The plaintiffs are four Wisconsin entities—Tissue Technology, LLC, Partners Concepts Development, Inc., Oconto Falls Tissue, Inc., and Tissue Products Technology Corp. (collectively the "OFTI Group")—controlled by Ronald Van Den Heuvel. The three corporate plaintiffs are each incorporated in the State of Wisconsin and have their principal places of business in De Pere, Wisconsin. Tissue Technology, LLC, has three members: Ronald J. and Kelly Van Den Heuvel, who are both citizens of Wisconsin; and Steven C. Peters, who is a citizen of the State of Illinois. Defendant Tak Investments, LLC, has two members: defendant Sharad Tak, a citizen of Florida; and Mahinder Tak, a citizen of Maryland. The court has jurisdiction under 28 U.S.C. § 1332.

Plaintiffs originally sued Tak Investments, LLC ("Tak Investments"), but in an amended complaint added claims against its manager, Sharad Tak ("Tak"). At this stage in the litigation, the Plaintiffs' sole remaining claim seeks recovery on the four promissory notes (the "Investment Notes") executed by Tak Investments in April 2007, which with interest now amount to more than

$34 million. During a bench trial on September 18–19, 2017, the court heard testimony from several witnesses, including Van Den Heuvel and Tak. The parties filed post-trial briefs, and the matter is now ready for decision. For the reasons stated below, I find that at least as to Plaintiffs, recovery on the Notes is barred by the terms of the contract that led to their issuance and because Plaintiffs are not in possession of the Notes. Because the Plaintiffs cannot recover, their claims will be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a convoluted and bizarre series of business transactions between Van Den Heuvel, Tak, and various entities they each control. Though serious credibility issues were raised as to each party's principal, the case is largely determined by the undisputed facts and written exhibits. In 2005 and continuing throughout 2006, Van Den Heuvel and Tak began discussing prospective business arrangements between their companies, including the sale by Van Den Heuvel and purchase by Tak of an existing tissue mill in Oconto Falls, Wisconsin, as well as the construction of new mills across the country. As relevant here, on April 16, 2007, ST Paper, LLC, a Delaware entity controlled by Tak, closed on an agreement to purchase the assets of Oconto Falls Tissue, Inc., from the OFTI Group for $86.4 million. Ex. 7 at 3; Ex. 8 at 1.

On that same day and separate from the Asset Purchase Agreement, Tak and Tak Investments entered into a Final Business Terms Agreement ("FBTA") with Van Den Heuvel and the OFTI Group. Ex. 11. At the same time and as contemplated by the FBTA, Tak Investments executed the Investment Notes, four promissory notes naming Tissue Products Technology Corp. ("TPTC") as payee. Ex. 11A. The Investment Notes had values of $4.4 million, $3 million,

2

$4 million, and $5 million, respectively, for a total amount of $16.4 million. The terms of the FBTA and the Notes are interrelated and at the core of this dispute.

The $4.4 million note established the following payment terms:

> FOR VALUE RECEIVED, the undersigned, **TAK INVESTMENTS, LLC** . . . hereby promises to pay to the order of **TISSUE PRODUCTS TECHNOLOGY CORP.** . . . or such other . . . designee as the Payee shall from time to time direct in writing to the Maker the principal sum of Four Million Four Hundred Thousand Dollars ($4,400,000). The unpaid principal balance of this Note shall bear interest at a rate per annum equal to eight percent (8%), per annum. Interest shall accrue from the date hereof and shall be payable on a semi-annual basis commencing on October 16, 2007. Principal hereon shall be due and payable in the amount of $440,000 on April 16, 2008, $440,000 on April 16, 2009 and $3,520,00 on April 16, 2010. Interest will be calculated based on a year consisting of 360 days applied to the actual days on which there exists an unpaid balance hereunder.

Ex. 11A at 1. All four Investment Notes had an identical interest structure consisting of the 8% annual interest rate and semi-annual interest payments. Across all four Notes, the three-year principal repayment schedule was also identical: 10% of the original principal balance was due on the first and second anniversaries of the Notes' execution, and the remaining principal balance was due on the third anniversary. The Notes state that they were made "FOR VALUE RECEIVED," but the parties dispute whether Tak Investments received any consideration for them.

Turning to the FBTA, two consecutive paragraphs pertaining to the Investment Notes are relevant to this litigation. First, paragraph 2(G) addresses payments under the Investment Notes:

> Through the third anniversary of the date of each Investment Note, the OFTI Group agrees to pay any payments due for interest or principal required per the terms of the Investment Notes. Each member of the OFTI Group jointly and severally agrees to indemnify [Tak Investments] and to hold it harmless from and against any and all damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs and expenses, including, without limitation, attorneys' fees, of or against [Tak Investments] resulting from the OFTI[] Group's failure to make such payments, which shall include, without limitation, any claims made by any current or future holder of such Investment Notes against [Tak Investments] relating to such interest

3

payments. If such Investment Notes are deemed cancelled by the OFTI Group after the third anniversary of the date of the Investment Notes, the OFTI Group shall receive an undiluted 27% ownership interest of the highest class in [Tak Investments] . . . ; provided however, if phase 2, as defined below, occurs after the transfer of ownership interest and prior to the tenth anniversary of the date of the Investment Notes, the OFTI Group shall return any ownership interests received from the Investment Notes.

Ex. 11 at 2. Next, paragraph 2(H) discusses the relationship between the Investment Notes and the "Phase 2" already mentioned in paragraph 2(G):

Each member of the OFTI Group agrees if the Phase 2 Financing (as defined below) is consummated on or before the tenth (10th) anniversary of the date of each Investment Note, the unpaid principal balance of each Investment Note shall be automatically reduced to zero, [Tak Investments] shall have no obligation to pay any unpaid principal or accrued interest thereunder, and each Investment Note shall be deemed cancelled. For purposes of this Agreement, "Phase 2 Financing" shall mean the consummation by [Tak Investments] (whether individually or in conjunction with an affiliated entity) or Tak (or an entity controlled by Tak) of financing to acquire the existing facility and construct a linerboard and/or tissue machine at the site presently owned by Eco Fibre, Inc. located at 500 Fortune Avenue in De Pere, Wisconsin using [Spirit Construction Services, Inc.] as general contractor with a minimum construction contract of $315,000,000.

*Id.* at 2–3.

The Phase 2 contemplated by the FBTA never occurred, and no entity controlled by Tak ever entered into a $315 million contract with Spirit Construction, a company owned by Van Den Heuvel's brother, to build one or more tissue mills. After Phase 2 failed to materialize, Plaintiffs sent notice to Tak Investments on September 17, 2009, stating that payments due under the Investment Notes had not been received. Ex. 18. On April 20, 2010, Plaintiffs sent notice "that the Investment Notes have been deemed cancelled." Ex. 19. Observing that the cancellation occurred after the third anniversary of the signing of the Investment Notes, the notice asked Tak Investments to "issue [an] undiluted 27% ownership Interest of the highest class units" in itself under paragraph

4

2(G) of the FBTA. *Id.* Plaintiffs filed a previous lawsuit against Tak Investments in this court seeking specific performance of that ownership transfer obligation. I granted summary judgment in favor of Tak Investments and dismissed the case because Plaintiffs had assigned at least one of the Notes and thus lacked authority to deem all four Investment Notes cancelled. *Tissue Tech. LLC v. Tak Invs.*, No. 12-C-1305, 2014 WL 12550389, at \*6 (E.D. Wis. Apr. 28, 2014).

In response to this court's decision in the first suit, Plaintiffs obtained a reassignment of the Note at issue. In a new notice to Tak Investments on August 15, 2014, Plaintiffs stated that they possessed all four Investment Notes, deemed them cancelled, and therefore sought a 27% interest in Tak Investments under paragraph 2(G) of the FBTA. Ex. 20. When Tak and Tak Investments once again declined to convey an ownership interest in Tak Investments, Plaintiffs filed the current action in this court seeking specific performance directing Tak Investments to transfer a 27% interest in itself. Summary judgment on this claim was granted in a December 2, 2016 decision on the ground that although an owner of a limited liability company could transfer an interest in the company, the company itself could not. Since Plaintiffs had not named Tak in its complaint, even though he was a signatory to the FBTA, I concluded specific performance could not be granted. ECF No. 40 at 3–4. But because the complaint sought "such other relief as the court deems just and proper," and Plaintiffs had alternatively argued for recovery on the notes, I did not dismiss the action at that time. *Id.* at 7–8.

Plaintiffs sought leave to file an amended complaint, which the court generously construed to add claims (1) to enforce the Notes against Tak Investments; (2) to enforce the Notes against Sharad Tak personally; (3) to enforce the terms of the parties' FBTA against Tak personally; and (4) to add a claim for unjust enrichment. ECF No. 48 at 1. Plaintiffs later abandoned the unjust

5

enrichment claim, and the court concluded that the claim to enforce the Notes against Tak personally was futile, since he had not signed them in his personal capacity. Plaintiffs were allowed to proceed on their claims against Tak for violation of the FBTA and against Tak Investments on the Investment Notes. ECF No. 48. On the eve of trial, Plaintiffs abandoned their claim against Tak personally, and all claims against Tak were dismissed with prejudice. The sole claim remaining is for recovery on the Investment Notes against Tak Investments.

To this claim, Tak Investments offered three defenses: (1) Plaintiffs are not in possession of the Investment Notes and thus lack standing to enforce them; (2) Plaintiffs' claim is barred by the statute of limitations; and (3) the Investment Notes are void for lack of consideration. In addition, on the morning of trial, Tak Investments moved to amend its answer by adding as an affirmative defense and/or counterclaim the fact that Plaintiffs agreed to jointly and severally indemnify and hold harmless Tak Investments from and against "any damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs, and expenses, including, without limitation, attorneys' fees, of or against [Tak] Investments resulting from enforcement of the Investment Notes." ECF No. 89 at 5–6 (citing Ex. 11, ¶ 2(I)). The court took Tak Investments' motion to amend its pleadings under advisement, and the trial proceeded. Having listened to the testimony and considered the arguments of counsel, I now conclude that Tak Investments' motion to amend should be granted.

### Motion To Amend

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings. We are well past the time when a party may amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). But that does not mean an amendment cannot be allowed. Rule 15(a)(2) provides that after amendment is no longer allowed as a matter of course, "a party may amend its pleading

6

only with the opposing party's consent or the court's leave." The court is directed to "freely give leave when justice so requires." *Id.* Under Subsection (b) of the Rule, amendments may be allowed during and even after trial. As relevant here, the Rule states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2).

Tak Investments' motion to amend its pleadings to add a claim for indemnification under the FBTA did not add a new element to the case. The FBTA, together with the Investment Notes that were issued pursuant to its terms, has been central to this case since its inception. Indeed, Plaintiffs' orginal complaint sought relief solely under the FBTA. Plaintiffs added their claim for enforcement of the Investment Notes after the court generously allowed them to file an amended complaint following the dismissal of their claim for specific performance of the FBTA. Plaintiffs introduced the FBTA as an exhibit, and most of the testimony from Van Den Heuval and Tak centered on the purpose, meaning, and intent of its provisions in relation to the Investment Notes. Plaintiffs have offered no argument suggesting they would suffer any prejudice if the late amendment were allowed, and the court has been unable to discern any basis on which such an argument could be made. Finally, the indemnification provision of the FBTA speaks directly to the only claims remaining in the case. Under these circumstances, I conclude that Tak Investments' motion to amend should be granted. To complete the record, Tak Investments is instructed to file an amended or supplemental pleading setting forth its affirmative defense and/or claim for indemnification within ten days of this

decision and order. Having fully addressed the issues at trial, however, there is no need to delay further. I therefore proceed to my findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. The Indemnification Provisions**

On their face, each of the Investment Notes appears to be a promissory note under which Tak Investments promised to pay Plaintiff TPTC the face amount of the note ($4.4 million, $3 million, $4 million, and $5 million), together with interest, over a three-year period. But under the terms of the FBTA, entered at the same time as the Notes were issued, Plaintiffs agreed "[t]hrough the third anniversary of the date of each Investment Note . . . to pay any payments due for interest or principal required per the terms of the Investment Notes," and to "jointly and severally . . . indemnify [Tak] Investments and to hold it harmless from and against any and all damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs and expenses, including, without limitation, attorneys' fees, of or against [Tak] Investments resulting from the OFTI Group's failure to make such payments, which shall include, without limitation, any claims made by any current or future holder of such Investment Notes against [Tak] Investments relating to such interest payments." Ex. 11, ¶ 2(G). It thus appears from the unequivocal terms of the FBTA that Plaintiff TPTC, the payee on the Investment Notes, along with the other OFTI Plaintiffs, agreed that they would indemnify and hold harmless Tak Investments, the payor on the Notes, for all principal and interest payments that came due over the three-year term of the Investments Notes. In other words, Plaintiffs are both the payee and payor on the Investment Notes, despite the fact that the Notes themselves were issued by Tak Investments.

8

Another provision of the FBTA makes this even more clear. Paragraph 2(I) sets forth additional indemnification terms regarding efforts to enforce the Investment Notes by any member of the OFTI Group or successor in interest:

> Each member of the OFTI Group jointly and severally agrees to indemnify [Tak Investments] and to hold it harmless from and against any and all damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs and expenses, including, without limitation, attorneys' fees, of or against [Tak Investments] resulting from enforcement of the Investment Notes by any member of the OFTI Group (other than the enforcement of the pledge described above), or any enforcement of or other claims made any [sic] other current or future holder of such Investment Notes against [Tak Investments] relating to the Investment Notes.

Ex. 11 at 3.

Considered together with the terms of the FBTA, it appeared that the Investment Notes had no value to the OFTI Group. Van Den Heuvel has continued to claim, however, that they served an important role in the agreement under which ST Paper, a limited liability company controlled by Tak, purchased the assets of Plaintiff Oconto Falls Tissue, Inc. At trial, Van Den Heuvel testified that the need for the Notes arose just weeks before the April 16, 2007 closing on the Asset Purchase Agreement. Van Den Heuvel testified that shortly before the closing, Goldman Sachs, which was to provide the financing for the transaction, reduced its funding from $84 million to $65 million. Ex. 6. The resultant shortfall forced the parties to make arrangements outside of the closing, a necessity that Van Den Heuvel says Tak acknowledged in a March 28, 2007 letter to Goldman Sachs. Ex. 4. Because of the shortfall, there would not be enough money to pay off the liens that Van Den Heuvel's creditors held on the assets. The Investment Notes and the FBTA were devised as a vehicle to allow Van Den Heuvel to convey clean title to the assets to ST Paper. Van Den Heuvel explained that he persuaded several of his secured creditors to release their liens on the

9

assets of the Oconto Falls tissue mill by offering to pledge the Investment Notes as substitute collateral. From Van Den Heuvel's perspective, Tak Investments therefore received consideration for the Investment Notes in the form of clean title to the assets of the Oconto Falls mill, as delivered to ST Paper, a related Tak business.

With respect to the provision of the FBTA stating that the OFTI Group would pay all interest and principal required under the terms of the Investment Notes and indemnify Tak Investments against any losses resulting from the OFTI Group's failure to do so, Van Den Heuvel testified that this provision simply meant that Plaintiffs were to make the payments that became due on the various bank loans that were secured by the Investment Notes for three years. Van Den Heuvel denied that the OFTI Group was expected to make the principal and interest payments due on the Investment Notes themselves. Instead, he said, the provision was intended to insure that Tak had at least three years before he would have to "put his equity in." ECF No. 89 at 65. "[F]or the first three years," Van Den Heuvel testified, "we could not let the banks that we assigned these to get back to him, and come back after him." *Id.* at 64–65. The Investment Notes, according to Van Den Heuvel, were intended to serve as part of the purchase price for the Oconto Falls tissue mill and thereby increase Tak's or, more precisely, ST Paper's equity. *Id.* at 66–67. After three years, the FBTA provided that the OFTI Group could deem the Investment Notes cancelled and thereupon receive "an undiluted 27% ownership interest of the highest class in [Tak] Investments." Ex. 11, ¶ 2(G). However, if within ten years, Tak or one of his business entities undertook what the agreement referred to as "Phase 2 Financing," the 27% interest would be returned. Phase 2 Financing was described as a commitment by Tak to obtain funds to enter into a $315 million contract with other Van Den Heuvel companies to expand and add machines. ECF No. 89 at 65–66.

Needless to say, Van Den Heuvel's interpretation of the indemnification and hold harmless provisions of the FBTA is not what the agreement says. It does not say that the OFTI Group is to make all payments of principal and interest on bank loans that are secured by the Investment Notes. Instead, the provision states that the OFTI Group is "to pay any payments due for interest or principal required per the terms of the Investment Notes." Ex. 11 at 2.

This is precisely how Tak said he interpreted the FBTA, though he denied knowing the Investment Notes were to replace Van Den Heuvel's collateral for various loans secured by the assets. Tak testified at trial that the Investment Notes were not a prerequisite for closing his company's purchase of the Oconto Falls mill. He noted that it was the seller's obligation to deliver title to the mill free and clear of liens and encumbrances as part of that transaction, so clearing the title was not Tak's responsibility. Instead, Tak testified, Van Den Heuvel presented him with the Investment Notes and the FBTA, which Tak agreed to sign only after Van Den Heuvel explained that the payment and indemnity terms in the FBTA meant that Tak Investments would never have to make any payments under the Investment Notes. Tak also testified that he understood the Investment Notes to function as a line of credit by which Van Den Heuvel could lend his businesses money for the purpose of building other paper mills, if plans for future construction materialized. ECF No. 90 at 20–21. Tak distinguished the Investment Notes from a set of promissory notes referred to as the Seller Notes, approximately $30 million worth of notes that were formally included as a part of the closing on the Oconto Falls mill, and which are currently subject to separate state court litigation in Oconto County.

The dispute between the parties over the meaning of the FBTA raises an issue of contract interpretation. Under Wisconsin law, which controls, "contracts are to be construed as they are

11

written." *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000). "Disputes over the meaning of a written contract are ordinarily resolved by reference to the meaning of the contract as it would be gathered by a reader competent in English (if the contract is in English) and reasonably endowed with common sense." *Airline Pilots Ass'n Intern. v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002) (applying Wisconsin law). The plain meaning of the FBTA provisions is that the OFTI Group agreed to pay the principal and interest required per the terms of the Investment Notes as they became due over the three-year term of the Notes, and to indemnify and hold harmless Tak Investments for any losses resulting from its failure to do so. And under Paragraph 2(I) of the FBTA, the OFTI Group agreed to indemnify Tak Investments and hold it harmless "against any and all damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs and expenses, including, without limitation, attorneys' fees, of or against [Tak Investments] resulting from enforcement of the Investment Notes by any member of the OFTI Group." Ex. 11 at 3. Moreover, the latter provision contained no three-year time limit. The clear meaning of the FBTA is that notwithstanding Tak Investments' issuance of four Investment Notes promising to pay Plaintiff TPTC $16.4 million over three years, Van Den Heuvel agreed on behalf of himself and the OFTI Group, including TPTC, that the OFTI Group would make all payments that became due on the Notes over the entire three-year term.

It thus follows that Plaintiffs' attempt to collect on the Investment Notes must fail. Having promised to make all payments due under the Notes and to indemnify and hold harmless Tak Investments against any third party attempt to collect on the Notes, Plaintiffs can bring no claim for collection on the Notes against Tak Investments that is not itself a claim against themselves. Contrary to Van Den Heuvel's interpretation, the indemnification and hold harmless provisions of

12

the FBTA were not limited, or even applicable, to the payments due on loans to Van Den Heuvel and his companies that were secured by the Investment Notes. The indemnification and hold harmless provisions pertained to the principal and interest payments of the Notes themselves. To the extent Tak Investments is liable on the Investment Notes, that liability belongs to Plaintiffs. And having forced Tak Investments to incur attorneys' fees and costs in defending against their claim, Plaintiffs are liable to those amounts as well.

This interpretation of the FBTA is not, as Van Den Heuvel suggests, absurd. Even though this reading of the FBTA rendered the Notes ultimately worthless as to TPTC and the other Plaintiffs, the Investment Notes did serve an important purpose. The Notes were intended, as Van Den Heuvel testified, to provide a way for the OFTI Group to convey clean title to the assets the OFTI Group had agreed to convey to ST Paper pursuant to the Asset Purchase Agreement, and they apparently accomplished this purpose. Van Den Heuvel was able to convince his creditors, including his brother and various banks, to release the liens they held on the assets by pledging the Investment Notes as security instead. Based on the clear and unequivocal language of the Notes, I therefore conclude that Plaintiffs cannot recover on them and their claim must be dismissed. I further conclude that Tak Investments is entitled to its actual attorneys' fees and costs in defending against Plaintiffs efforts to recover on the Notes.

**B. Other Defenses**

Given my conclusion that Plaintiffs are barred from collecting on the Investment Notes by the provisions of the FBTA, there is no need to continue. For completeness, however, I will briefly address Tak Investments' other defenses to Plaintiffs' action.

**1. Lack of consideration**

Tak Investments argues that the Investment Notes are void for lack of consideration, noting that it received no payments in exchange for making the Investment Notes. Under the Uniform Commercial Code, the maker of a note has a defense to payment if the instrument is issued without consideration. Wis. Stat. § 403.303(2). The fact that Tak Investments did not receive money, however, does not mean that it did not receive consideration. "Consideration" means "any consideration sufficient to support a simple contract." *Id.* "In Wisconsin, consideration consists of either a detriment to the promisor or a benefit to the promisee." *Tinder v. Pinkerton Security*, 305 F.3d 728, 734 (7th Cir. 2002) (citing *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 520 N.W.2d 93, 96 (1994)). Although use of the phrase "for value received" creates a presumption that consideration exists, that presumption is rebuttable. *See Wortley v. Kieffer*, 70 Wis. 2d 734, 739–40, 235 N.W.2d 296, 299–300 (1975).

Here, it is clear that ST Paper, in which Tak also had a controlling interest, received a benefit in return for the Investment Notes issued by Tak Investments. Under Wisconsin law, a benefit to a third person can constitute sufficient consideration for a contract. *United States v. Bob Chrislaw, Inc.*, 341 F.2d 887, 889 (7th Cir. 1965); *see also* Wis. Stat. § 403.303(1)(e). Van Den Heuvel was able to use the Investment Notes as substitute collateral for old loans or as security for new loans, the proceeds of which he then used to pay off debt that was secured by the Oconto Falls tissue mill. ECF No. 89 at 8–13, 49–53; Ex. 13. Had it not been for the Investment Notes, Van Den Heuvel would not have been able to give ST Paper the clean title to the assets of Oconto Falls Tissue, Inc., and the transaction would not have gone through. Tak, as president of ST Paper, *see* Ex. 7 at 39, clearly benefitted from the Investment Notes he signed as president of Tak Investments. The Investment Notes were therefore not void for lack of consideration.

## 2. Plaintiffs do not possess the Notes

Tak Investments also argues that Plaintiffs cannot enforce the Notes because they do not possess them. In fact, the testimony at trial established that each of the Notes, except one, is currently held by either Van Den Heuvel's brother or by one of several banks for debt incurred by Van Den Heuvel and/or one of his companies. The fourth was not produced, although Plaintiffs offered evidence that a loan that it at one time secured at Associated Bank had been paid off. In any event, Plaintiffs didn't have possession of any of the Investment Notes.

In order to enforce an instrument such as a promissory note, a person must be "the holder of the instrument, a nonholder in possession of the instrument who has rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 [relating to lost, destroyed, or stolen instruments] or 403.418(4) [relating to payment by mistake]." Wis. Stat. § 403.301. A "holder" of a negotiable instrument is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Wis. Stat. § 401.201(2)(km). Because the Notes were transferred to Van Den Heuvel's creditors, TPTC, the payee, is not a holder and has no right to enforce them. Wis. Stat. § 403.301. Nor do any of the other Plaintiffs. Only the creditors to whom the Notes were transferred as security for Van Den Heuvel's debts have standing to enforce them. Wis. Stat. § 403.204(3); *see also Curtis v. Mohr*, 18 Wis. 615, 618–19 (1864) ("We suppose the law to be perfectly well settled that where a person takes a negotiable promissory note before maturity in the usual course of business, even as collateral security, and makes advances at the time upon the credit of such note, he is considered by all the authorities as a bona fide holder for value, within the rule for the protection of commercial paper. The indorsement and delivery of the note, under such

15

circumstances, transfer to the holder the title to the instrument, and give him an original and paramount right of action upon it against the previous parties, so that he is not affected by the equities existing between them.").

Plaintiffs contend that the creditors in possession of the Notes did not have authority to enforce them because Plaintiff TPTC did not endorse them. ECF No. 93 at 3–6. The creditors held the Notes as security, Plaintiffs argue, but title remained with Plaintiffs. But Plaintiffs did not simply transfer possession of the Notes to their creditors; they also gave their creditors written assignments or consents to pledge the Notes as security for their debt. Exs. 12–15, 17. "For the purpose of determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument." Wis. Stat. § 403.204(3). Thus, it would appear that while Plaintiffs' creditors who were in possession of the Notes could have enforced them, Plaintiffs could not. Not only because, as noted above, Plaintiffs had promised to indemnify Tak Investments for any payments due on the Notes, but also because Plaintiffs were not in possession of them. For this reason also, Plaintiffs' claims against Tak Investments fail.

### 3. Statute of limitations

Finally, Tak Investments contends that Plaintiffs' action is barred by the six-year statute of limitations applicable to contracts. *See* Wis. Stat. § 893.43(1); *see also Hennekens v. Hoerl*, 160 Wis. 2d 144, 159 n.12, 465 N.W.2d 812 (1991) (noting "a creditor has six years to commence an action on a promissory note"). By their terms, the Investment Notes were made on April 16, 2007, and were payable in full three years later on April 16, 2010. Thus, Tak Investments contends that the six-year statute of limitations expired on April 16, 2016. Although Plaintiffs commenced the

16

current action on September 30, 2014, they did not add the claims for enforcement of the promissory notes until they moved for leave to amend their complaint on January 9, 2017, which motion was granted on April 3, 2017. ECF Nos. 44, 48. Because April 3, 2017, is more than six years after April 16, 2016, Tak Investments contends that Plaintiffs' enforcement action is barred.

I conclude that the claims are not barred by the statute of limitations. The record reveals that the $4.4 million Investment Note was amended as part of an assignment on March 5, 2008. Ex. 17 at 7. As amended, that Note was to mature on March 5, 2011. Thus, the statute of limitations would not have expired as to that Note until March 5, 2017. This was two months after Plaintiffs filed their motion for leave to amend, along with a copy of the complaint. Although I did not grant Plaintiffs' motion to amend until April 3, 2017, I am satisfied that for purposes of the statute of limitations, my ruling dates back at least to the day Plaintiffs filed their motion and proposed complaint.

Even as to the other notes, I conclude that the claims are not barred by the statute of limitations. Under Rule 15(c), an amendment of a complaint relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Investment Notes on which Plaintiffs sought to collect via the claim in their amended complaint, as well as Plaintiffs' attempt to recover for their nonpayment, arose out of the transaction set out in the original pleading. Indeed, they were attached to the original complaint and were central to the entire action. For the reasons set out above, Plaintiffs' claim to enforce the Notes fails, but the claim is not barred by the statute of limitations.

## CONCLUSION

For the reasons set forth above, Tak Investments' oral motion for the amendment of pleadings is granted, and Tak Investments is directed to file its amended affirmative defense/counterclaim based on the indemnification provision of the FBTA within ten days of this order. Based on the indemnification and hold harmless provision of the FBTA and because Plaintiffs were not in possession of the Investment Notes, Plaintiffs' claim for enforcement of the Notes is dismissed. The Clerk is directed to enter judgment accordingly. As to Tak Investments' claim for actual attorneys' fees and costs, the parties are directed to Rule 54(d)(2) and the time limits set forth therein. Fed. R. Civ. P. 54(d)(2).

**SO ORDERED** this 19th day of March, 2018.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach, Chief Judge
                                                  United States District Court